LEWIS
AND
ROCA
——— LLP ———
L A W Y E R S

40 North Central Avenue
19th Floor
Phoenix, Arizona 85004-4429
Telephone: (602) 262-5311
Michael J. McCue, Nevada Bar No. 6055 (Pro Hac Vice Motion Pending)
Direct Dial: (702) 949-8224
Direct Fax: (702) 949-8363
Email: MMcCue@LRLaw.com
Jennifer A. Van Kirk (State Bar No. 019618)
Direct Dial: (602) 262-0203
Direct Fax: (602) 734-3885
Email: JVanKirk@LRLaw.com
Sean D. Garrison (State Bar No. 014436)
Direct Dial: (602) 223-7434
Direct Fax: (602) 734-3939
Email: SGarrison@LRLaw.com
Anne Aikman-Scalese (State Bar No. 023066)
Direct Dial: (520) 629-4428
Direct Fax: (520) 879-4725
Email: AAikman@LRLaw.com

Attorneys for Plaintiff Raytheon Company

## UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

|  |  |
|---|---|
| Raytheon Company,<br>a Delaware corporation,<br><br>               Plaintiff,<br><br>vs.<br><br>Lockheed Martin Corporation,<br>a Maryland corporation,<br><br>               Defendant. | **COMPLAINT**<br><br>(1) Declaratory Judgment under 28 U.S.C. § 2201 *et seq.*<br>(2) Unfair Competition and False Designation of Origin, 15 U.S.C. § 1125(a)(1)<br>(3) Trademark Infringement under A.R.S. §§ 44-1441 *et seq.*<br>(4) Common Law Trademark Infringement and Unfair Competition<br>(5) Unjust Enrichment<br><br>**(Jury Trial Demanded)** |

Plaintiff Raytheon Company ("Raytheon") by and for its Complaint against Defendant Lockheed Martin Corporation ("Lockheed") alleges as follows:

### INTRODUCTION

This action is between two direct competitors in the Laser Guided Bomb ("LGB") market: Raytheon and Lockheed. When introduced forty (40) years ago by Raytheon's predecessor-in-interest, Texas Instruments, PAVEWAY™ LGBs revolutionized tactical air-to-ground warfare. Since that time, Raytheon has sold billions of dollars worth of its



1  PAVEWAY™ LGBs, which have been used in every major U.S. military operation since
2  the 1970s, and has developed strong trademark rights and substantial goodwill in the
3  PAVEWAY™ mark.  The generic name for these goods is GBU-10, GBU-12, and GBU-
4  16 LGB kits.

5      Defendant Lockheed entered the Laser-Guided Training Round or LGTR market
6  in the early 1990s and sold its LGTRs for over ten (10) years under the product's true
7  generic name -- "Laser Guided Training Rounds."    When Lockheed started
8  manufacturing GBU-10 and GBU-12 kits for LGBs (as opposed to training rounds) in
9  2002, it continued to use the generic name "laser guided bomb" or the abbreviation
10  "LGB."  During the period from 2002 to 2005, it also referred to its kits as LMLGB for
11  Lockheed Martin Laser Guided Bomb, DMGB for Dual Mode Guided Bomb, and
12  DMLGB for Dual Mode Laser-Guided Bomb.

13      Then in approximately 2005 -- three years after entering the LGB kit market and
14  *decades after the* PAVEWAY™ *mark was first used by Raytheon's predecessor in*
15  *interest* -- Lockheed decided to start calling its own LGB kits "PAVEWAY," so as to
16  capitalize on the substantial goodwill Raytheon had already established in the
17  PAVEWAY™ mark. Lockheed then set in motion a deliberate strategy to simultaneously
18  misappropriate and destroy Raytheon's rights in the term PAVEWAY™.

19      Lockheed's continued and progressive encroachment on Raytheon's rights in its
20  PAVEWAY™ mark has caused actual confusion in the market and substantial and
21  irreparable injury to Raytheon.  Moreover, Lockheed's LGB products have experienced
22  poor quality issues, causing post-sale confusion and direct harm to Raytheon's reputation
23  and goodwill, as well as millions of dollars in lost sales.

24      From 2005 through 2011, Raytheon and Lockheed engaged in a six-year battle
25  over the registrability of the PAVEWAY™ mark in the Trademark Trial and Appeal
26  Board of the United States Patent and Trademark Office ("TTAB") and are engaged in
27  similar proceedings in foreign jurisdictions.  Based in part on Lockheed's own efforts to

28



1    use the mark in a generic fashion and to influence the perceptions in the market,

2    Lockheed was able to convince the TTAB that PAVEWAY™ is a generic term primarily

3    based on evidence dating from 2005, three years *after* Lockheed entered the market.

4    However, as discussed below, in this Court and in the Ninth Circuit, the distinctiveness of

5    the PAVEWAY™ mark must be determined at the time that Lockheed entered the market

6    in 2002.   At that time and continuing to the present, the PAVEWAY™ mark was and

7    continues to be a distinctive mark identifying Raytheon as the source of LGBs.

8            Raytheon asserts claims for declaratory judgment, unfair competition, false

9    designation of origin, trademark infringement, and unjust enrichment arising out of

10   Lockheed's infringement and attempts to destroy the distinctiveness of the PAVEWAY™

11   mark.   Raytheon seeks injunctive relief, damages, attorneys' fees and costs.

12                               **THE PARTIES**

13           1.      Plaintiff Raytheon is a Delaware corporation with a principal place of

14   business at 870 Winter Street, Waltham, Massachusetts 02451.   Raytheon Missile

15   Systems is the largest division of Raytheon Company.   It is located in Tucson and

16   employs about 12,000 people.   The LGBs in question are designed, marketed and

17   manufactured by the Air Warfare Systems product line in Tucson, Arizona.

18           2.      Upon information and belief, Defendant Lockheed is a Maryland

19   corporation with a principal place of business at 6801 Rockledge Drive, Bethesda,

20   Maryland 20817.

21                              **NATURE OF THE CASE**

22           3.      This is an action for declaratory judgment under 28 U.S.C. §§ 2201, unfair

23   competition and false designation of origin in violation of Section 43(a) of the Lanham

24   Act, 15 U.S.C. § 1125(a), Arizona state trademark infringement in violation of A.R.S.

25   §§ 44-1441 *et seq.*, common law trademark infringement and unfair competition, and

26   unjust enrichment in violation of Arizona law.

27

28



LEWIS
AND
ROCA
—LLP—
L A W Y E R S

**JURISDICTION AND VENUE**

4.     This Court has original subject matter jurisdiction in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), and pursuant to 15 U.S.C. § 1121(a), because Raytheon's unfair competition and false design claim arises under the federal trademark laws, 15 U.S.C. § 1051, *et seq.*

5.     The Court has supplemental jurisdiction over the remaining claims for relief under 28 U.S.C. § 1367(a) because they are so related to the claims within the original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution.

6.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Raytheon and Lockheed, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.     This Court has general jurisdiction over Lockheed based on its continuous and systematic contacts with this District, including, among other things, owning and operating a manufacturing facility in Goodyear, Arizona, and a Missiles and Fire Control Support Center in Gilbert, Arizona.  In addition, the Court has specific jurisdiction over Lockheed. Lockheed purposefully directed its activities at Arizona by committing intentional acts expressly aimed at Arizona thereby causing harm that Lockheed knew was likely to be suffered by Raytheon in this District.  Specifically, Lockheed knowingly adopted the PAVEWAY™ mark -- a mark identical to Raytheon's PAVEWAY™ mark -- and used the mark to compete directly with Raytheon.  Raytheon's claims arise out of or relate to the Lockheed's forum-related activities, namely, Lockheed's adoption and use of the PAVEWAY™ mark.  In addition, Lockheed knew that its tortious conduct would be felt by Raytheon in Arizona, where its business unit that designs and sells the products at issue is based.  Finally, the exercise of personal jurisdiction over Lockheed would be fair and reasonable.  Lockheed has purposefully interjected itself into this District.  Because



LEWIS
AND
ROCA
——LLP——
L A W Y E R S

1   Lockheed has significant operations in Arizona, the burden on Lockheed in defending in

2   this District would not be significant.  The exercise of jurisdiction would not conflict with

3   the sovereignty of the State of Maryland, where Lockheed is incorporated.  The State of

4   Arizona has a very strong interest in adjudicating this dispute, which directly affects one

5   of its largest employers.  This District can provide an efficient judicial resolution of the

6   controversy, because the time from filing to disposition is reasonable. This forum is

7   important to Raytheon's interest in convenient and effective relief, because a large

8   number of the witnesses and the documents relating to this dispute are located in Tucson.

9   Finally, there is no alternative forum that would be more convenient.

10       8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2).

11   **BACKGROUND ON RAYTHEON'S LASER GUIDED BOMB PRODUCTS**

12       9.     Raytheon is an industry leader in defense and government electronics,

13   space, information technology, technical services, and business aviation and special

14   mission aircrafts. For the past ninety (90) years, Raytheon has developed new defense

15   technologies and applied these technologies for use in defense and commercial markets.

16       10.    In 1997, Raytheon acquired Texas Instruments' laser guided bomb division.

17   LGBs have a guidance system that detects laser energy and guides the weapon to a target

18   illuminated by an external laser source.

19       11.    Since its acquisition of Texas Instruments' LGB division, Raytheon has

20   manufactured and sold LGBs under the PAVEWAY™ trademark.  PAVEWAY™ LGBs

21   have been manufactured in Tucson, Arizona, since 1999.

22       12.    The unique attributes of the PAVEWAY™ LGBs quickly made them

23   preferred munitions of the United States Air Force ("USAF") and United States Navy

24   ("USN").

25       13.    For over thirty (30) years, Raytheon and its predecessor in interest, Texas

26   Instruments, were the single source for U.S. military buyers of LGB products, which

27   were marketed under the PAVEWAY™ mark.

28

LEWIS
AND
ROCA
——LLP——
L A W Y E R S

1       14.   The introduction of the PAVEWAY™ laser guided bomb products forty

2   (40) years ago revolutionized tactical air-to-ground warfare. The PAVEWAY™ LGBs

3   not only drastically reduce the number of munitions required to destroy a target, but they

4   also feature accuracy, reliability, and cost-effectiveness previously unattainable, while

5   reducing collateral damage.

6       15.   Raytheon's PAVEWAY™ kits are the most successful air-to-ground

7   weapon system available, making up over half of all air-to-ground precision guided

8   weapons in Operation Desert Storm and Operation Iraqi Freedom.

9       16.   Raytheon has made significant sales of its LGB products under the

10   PAVEWAY™ mark. By 2004, before Lockheed began using the PAVEWAY™ mark,

11   Raytheon had delivered 250,000 units of the PAVEWAY II LGB product. As of 2012,

12   Raytheon has delivered an estimated 340,000 LGB products under the PAVEWAY™

13   mark, amounting to several billions of dollars in sales.

14   **RAYTHEON'S LONG-STANDING USE OF THE PAVEWAY™ MARK**

15   17. For forty (40) years, Raytheon (directly and through its predecessor in interest) has

16   extensively used and promoted its PAVEWAY™ mark in connection with the marketing

17   and sale in commerce of LGB products. Raytheon offers a family or suite of

18   PAVEWAY™ LGB products as follows:

19      •  PAVEWAY™ II LGB is Raytheon's basic laser-guided bomb, using laser energy

20         directed on the target and received by a guidance kit.

21      •  ENHANCED PAVEWAY™ II LGB utilizes laser energy as well as Global

22         Positioning System ("GPS") and Inertial Navigation System ("INS"), making it a

23         dual-mode laser-guided bomb with all-weather precision.

24      •  PAVEWAY™ III LGB enhances the PAVEWAY™ II LGB's capability with

25         increased delivery range, low-level release optimization, and greater seeker lock-

26         on distance. Lockheed does not manufacture or supply this product.

27      •  ENHANCED PAVEWAY™ III LGB adds GPS/INS capability to the low-altitude,

28



LEWIS
AND
ROCA
—LLP—
L A W Y E R S

1    long-range capability of the PAVEWAY™ III LGB product.

2    • PAVEWAY™ IV LGB is a dual mode laser guided bomb that includes a

3       specialized warhead and fuse.

4    In the procurement process, the generic term for all of the above products and associated

5    guidance kits is Guided Bomb Unit or "GBU". Differentiation of the various laser

6    guidance kits is achieved by adding numbers and letters after the generic term "GBU".

7    Thus, a GBU-10 kit accommodates a 2000 pound warhead, a GBU-12 kit accommodates

8    a 500 pound warhead, and a GBU-16 kit accommodates a 1,000 pound warhead. The kit

9    consists of a Computer Control Unit ("CCU") mounted at the front of the bomb for

10    targeting and guidance and an Air Foil Group ("AFG") fitted at the back of the bomb that

11    operates as a "tail fin". Raytheon's PAVEWAY™ family of LGB kits have been the

12    leader in precision-guided weapons since its introduction and is the "control" in the LGB

13    Procurement process.

14        18.    Raytheon's PAVEWAY™ LGB kits have been put to the test in every major

15    conflict and have proven themselves to be the weapon of choice for the end user. As a

16    result, the relevant consumers recognize the PAVEWAY™ mark as referring to

17    Raytheon's high-quality LGB products.

18        19.    Over the years, Raytheon and its predecessor in interest have invested

19    substantial time and resources developing valuable goodwill in the PAVEWAY™ mark.

20    As a result, the PAVEWAY™ mark is a strong and highly distinctive mark that identifies

21    Raytheon as the source of its family of quality PAVEWAY LGB kits.

22        20.    At the time Lockheed entered the LGB market, the PAVEWAY™ mark had

23    gained substantial notoriety and goodwill among purchasers and potential purchasers of

24    LBG kits. And, at all times prior to Lockheed's entry into the LGB market and since

25    then, the PAVEWAY™ mark has maintained its distinctiveness.

26        21.    Raytheon sells PAVEWAY™ LGB products in commerce to a variety of

27    customers through various trade channels, including directly to the Department of

28



1  Defense and U.S. government agencies, and to foreign customers through direct foreign

2  sales and through foreign military sales.  Through its decades of extensive, continuous

3  and exclusive use, Raytheon has developed significant goodwill in the PAVEWAY™

4  mark.  Raytheon has sold PAVEWAY™ LGBs in over forty (40) countries and has

5  extensively used and promoted PAVEWAY™ LGB kits in over sixty (60) countries,

6  including but not limited to the United States, the United Kingdom, Norway, Switzerland,

7  Australia, Canada, Turkey, South Korea, India, Pakistan, Egypt, Jordan, Kuwait, Saudi

8  Arabia, and others.

9      22.    The PAVEWAY™ mark is inherently distinctive and therefore entitled to

10  trademark protection and registration without any showing of secondary meaning.

11  Indeed, "paveway" is not an existing English word and has no meaning when applied to

12  LGBs.  In the alternative, if the PAVEWAY™ mark is not inherently distinctive, it has

13  acquired secondary meaning as a result of the extensive use and promotion of the mark

14  by Raytheon and its predecessor in interest over a significant period of time.  As a result

15  of Raytheon's decades of continuous, widespread and exclusive use prior to the

16  commencement of Lockheed's deliberate and systematic trademark encroachment, the

17  PAVEWAY™ mark is a strong and distinctive mark.  Moreover, in light of the fame,

18  notoriety, and history of the PAVEWAY™ mark, the amount of effort used to promote

19  the mark as a distinctive source identifier of Raytheon's LGBs, and its association in the

20  relevant public mind with Raytheon, the PAVEWAY™ mark has acquired secondary

21  meaning for the majority of end users as well as the relevant purchasing public, including

22  foreign military buyers who buy in the U.S.

## LOCKHEED'S PROGRESSIVE ENCROACHMENT
## ON RAYTHEON'S RIGHTS

25      23.    Lockheed began selling laser guided training rounds (also called "LGTRs")

26  in 1992.  LGTRs serve as practice bombs used to train aircrews in the use of LGBs.

27  From 1992 through approximately 2004, Lockheed used the generic descriptor "Laser

28



1    Guided Training Rounds" to identify its LGTRs.

2        24.    In 2002, pursuant to the terms of a Settlement Agreement between

3    Lockheed and the Department of Defense (which had previously refused to qualify

4    Lockheed as a supplier of LGBs), Lockheed became qualified to sell LGBs. Until this

5    point, Raytheon and its predecessor in interest were the sole source of LGBs in the U.S.

6    and the sole user of the PAVEWAY™ mark.

7        25.    When it first entered the LGB market in 2002, Lockheed used generic

8    designations such as "laser guided bomb" and "LGB" to refer to its products.  At that

9    time, the PAVEWAY™ brand was associated solely and exclusively with Raytheon.

10       26.    For an appreciable amount of time, after it initially entered the LGB

11   market, Lockheed did not use the PAVEWAY™ mark to identify its LGB products.

12       27.    On information and belief, it was not until 2004 or 2005 that Lockheed

13   began using Raytheon's PAVEWAY™ mark on its competing LGB products. During

14   depositions in a trademark opposition proceeding in Israel, Lockheed admitted that it

15   added PAVEWAY™ to its existing product name for the LGBs to enhance "brand

16   recognition."

17       28.    Since that time, Lockheed has used the PAVEWAY™ trademark in an

18   increasingly prominent manner.  For example, in October 2006, Lockheed began using

19   the PAVEWAY™ mark in press releases, in marketing materials and in various other

20   ways.  In fact, Lockheed has used Raytheon's PAVEWAY™ mark in the same prominent

21   manner in which it uses its own proprietary marks.  True and accurate illustrations of

22   Lockheed's unauthorized use of the PAVEWAY™ mark are attached at Exhibit A.

23       29.    Upon information and belief, Lockheed's infringing LGB products are sold

24   in commerce to some of the same customers and through some of the same trade

25   channels as Raytheon's PAVEWAY™ LGB products, including directly to the

26   Department of Defense and U.S. government agencies, and to foreign customers through

27   direct foreign sales and through foreign military sales.

28



LEWIS
AND
ROCA
—LLP—
L A W Y E R S

30.     Upon information and belief, Lockheed's LGB products are different in certain respects from Raytheon's PAVEWAY™ LGB kits.  For example, Raytheon uses analog technology in its CCU guidance unit while Lockheed uses digital technology. Lockheed does not offer LGB products that correspond to Raytheon's PAVEWAY™ III LGB kit, Raytheon's ENHANCED PAVEWAY™ III kit, or Raytheon's PAVEWAY™ IV kit. In addition, some aircraft have been cleared for Raytheon's PAVEWAY™ LGB kits but not for Lockheed's LGB products.   Similarly, Lockheed's LGB products are not compatible with some test equipment that is used with Raytheon's PAVEWAY™ LGB products.    Further, Raytheon does not make or sell Laser Guided Training Rounds (LGTRs) at all.

## LOCKHEED MARTIN'S USE OF THE PAVEWAY DESIGNATION HAS CAUSED ACTUAL CONFUSION

31.     Lockheed's use of the PAVEWAY™ mark has resulted in several instances of actual confusion among LGB purchasers.  For example, Raytheon received a report of "severe accuracy issues" with PAVEWAY™ LGB kits in connection with U.S. Naval operations.   Raytheon immediately attempted to determine the possible cause of the problem.   However, after requesting serial numbers, Raytheon quickly learned that Raytheon's PAVEWAY™ kits were not at issue; rather, the accuracy problems were with Lockheed's products.

32.     Lockheed's unauthorized use of the PAVEWAY designation also has resulted in actual confusion among foreign military purchasers who buy in the U.S. For example, on October 12, 2005, Raytheon employees briefed members of the Royal Netherlands Air Force ("RNAF") on Raytheon's PAVEWAY™ II kits. Part way through the briefing, the RNAF indicated that the Raytheon group they met with previously had not briefed the same weapon capability.  The RNAF further indicated that, as a result of the previous briefing and reported inability of the PAVEWAY LGBs to hit moving targets, the RNAF was advised to remove Raytheon from the dual-mode weapon



1  competition. Raytheon advised the RNAF that no one from Raytheon had previously

2  briefed the RNAF. Raytheon later learned that the previous RNAF briefing was with

3  Lockheed. After learning of the error, the RNAF placed Raytheon's PAVEWAY™ LGB

4  back in the competition. Raytheon was almost eliminated from the competition because

5  of the confusion caused by Lockheed's use of Raytheon's PAVEWAY™ mark in

6  connection with an inferior product.

7  33.    In another incident, in spring 2004, during Operation Iraqi Freedom, a U.S.

8  military unit aboard the USS George Washington reported serious inaccuracy issues with

9  PAVEWAY LGBs. In Raytheon's discussions with the Commanding Officer trying to

10  figure out the possible causes of the failures, it became apparent that there was confusion

11  resulting from Lockheed's use of the PAVEWAY™ mark in connection with its LGB

12  products. The accuracy problems were associated with Lockheed's LGBs, not Raytheon's

13  LGBs.

14  34.    In addition, during the Raytheon Strike Warfare Conference held in 2004,

15  the 86th Fighter Squadron, which controls the USAF Weapons System Evaluation

16  Program, briefed recent LGB product performance results. The results were broken

17  down by LGB airfoil type, as well as LGB guidance type. The data showed significant

18  discrepancies between the two guidance systems, leading to a recommendation that one

19  of the models not be used until the USAF completed a full review process. The audience

20  was not aware that the hardware at issue was made by two different manufacturers and

21  that the hardware with low performance results was Lockheed's product -- not

22  Raytheon's product. Again, the poor performance of Lockheed's LGB product was

23  attributed to Raytheon due to confusion caused by Lockheed's use of the PAVEWAY™

24  mark in connection with Lockheed's inferior LGBs.

25  35.    Confusion has resulted with foreign military buyers from Italy and Saudi

26  Arabia, each of whom placed orders in the U.S. for PAVEWAY LGBs through the

27  United States Foreign Military Sales process. These buyers were surprised to learn that

28



1    the U.S. DOD was providing them with Lockheed LGBs which had not been qualified on

2    their aircraft, were not compatible with their existing logistics train, and were not

3    compatible with their existing, approved testing and maintenance systems

4        36.    More recently, in January 2011, confusion resulting from Lockheed

5    Martin's use of Raytheon's PAVEWAY™ trademark threatened to negatively affect

6    Raytheon's reputation with high-level Air Force personnel.  On or about January 27,

7    2011, Raytheon Vice President of Air Warfare Systems Harry Schulte attended the

8    annual executive level Air Force Weapon Systems Review at Eglin Air Force Base in

9    Florida. During the course of the weapons review and with several Air Force Generals in

10   the room, the presenter stated that there had been problems with the accuracy of

11   Raytheon's PAVEWAY™ LGBs over the past year. When Mr. Schulte raised a question

12   regarding this statement, the presenter clarified that the problems with inaccuracy in

13   targeting had actually been observed in connection with the LGBs provided by Lockheed

14   Martin. On information and belief, this confusion continues in the service branches and

15   among end users in various situations where Raytheon does not have the opportunity to

16   correct the misinformation.

17       37.    Raytheon is also aware of other instances in which military units have

18   restricted use of Raytheon's PAVEWAY™ LGBs based on alleged performance issues

19   because they inadvertently confused Lockheed's LGBs with Raytheon's PAVEWAY™

20   LGBs.  These instances of actual confusion have not only harmed Raytheon's business,

21   but they have also damaged Raytheon's reputation.

22              **RAYTHEON'S ACTIONS AND TRADEMARK OPPOSITION**

23       38.    Upon learning of Lockheed's progressive encroachment on its rights in the

24   PAVEWAY™ mark in 2005, Raytheon began taking steps to protect and enforce its

25   trademark rights.  Raytheon objected to Lockheed's usurpation of Raytheon's rights in

26   the PAVEWAY™ mark.  Instead of continuing to rely on its common law trademark

27   rights as it had for decades as the sole producer of LGBs, Raytheon filed federal

28



1   trademark applications for the PAVEWAY mark (Ser. Nos. 78/481,770, 78/672,972) in

2   2004 and 2005, respectively.  True and accurate copies of the trademark applications are

3   attached as Exhibit B.  In connection with the filing of the trademark applications,

4   Raytheon also filed a "petition to make special" in light of Lockheed's infringement of

5   the PAVEWAY™ mark in an effort to expedite the trademark registration process.

6        39.    Despite Raytheon's long-standing, continuous and exclusive use of the

7   PAVEWAY™ mark for LGBs until Lockheed began its infringement, in 2005 and 2006,

8   respectively, Lockheed opposed Raytheon's trademark applications to register the

9   PAVEWAY™ marks, based on, among other grounds, the contention that "PAVEWAY"

10   is a generic term.  The oppositions were consolidated and proceeded in the TTAB

11   (Opposition No. 91167189) for a total of six years -- until December 2011.  Numerous

12   other trademark proceedings involving the PAVEWAY™ mark are pending between the

13   parties in foreign jurisdictions.

14        40.    While the TTAB proceeding was pending, Lockheed began authoring its

15   own evidence of the alleged genericness of the PAVEWAY™.  For example, beginning in

16   October 2006 -- after Raytheon had applied for federal registration of its PAVEWAY™

17   mark -- Lockheed began issuing press releases stating that "Paveway is a generic term."

18   The press releases were targeted to military customers in the U.S. and abroad.  An

19   example of these press releases is attached as Exhibit C.  By including the statement that

20   "Paveway is a generic term" in its press releases, Lockheed was intentionally attempting

21   to buttress its position in the TTAB proceedings and influence consumers into believing

22   that PAVEWAY is a generic term. Later, Lockheed began using "PAVEWAY" with a

23   lower case "p" -- another tactic designed to try to render the mark generic.  Indeed, by

24   trying to influence the perceptions of consumers that PAVEWAY™ is a generic term,

25   upon information and belief, Lockheed was attempting to push the trademark into

26   genericism and influence the outcome of the TTAB proceeding.

27        41.    In December 2011, in an opinion that it designated as non-precedential and

28



1   in which it specifically mentioned it had no jurisdiction over unfair competition claims,

2   the TTAB concluded that, based on the evidence provided during the TTAB proceeding,

3   PAVEWAY™ is a generic term for LGBs.  However, the TTAB applied a different

4   standard than the standard for determining genericness in this Court.  Indeed, the TTAB

5   determined genericness long *after* Lockheed began using the PAVEWAY™ mark and

6   creating self-serving evidence of genericness, such as press releases stating that

7   "Paveway is a generic term."  However, in the Ninth Circuit, the genericness of a mark is

8   determined at the time that the alleged infringer entered the market -- in this case, in

9   2002.  In addition, the TTAB's decision is not binding on this Court and, under the

10  circumstances, is not persuasive authority.  The TTAB's only power is to determine

11  questions of federal trademark registration.  The TTAB does not have the power to

12  determine the protectability of the PAVEWAY™ mark, whether Raytheon is entitled to

13  exclusive use of the PAVEWAY™ mark, or whether Lockheed is liable for trademark

14  infringement, unfair competition, or on any other claim that Raytheon has asserted or

15  may assert against it.  However, the pendency of the TTAB proceedings tolled the time

16  period for bringing a civil action for infringement and, after six years of TTAB litigation

17  and numerous additional instances of actual confusion and gradual erosion of its goodwill

18  and reputation, Raytheon has reached its limit.

19      42.     Raytheon cannot control the quality of Lockheed's LGB products and is not

20  willing to be held accountable -- due to customer confusion -- for poor quality LGB

21  products sold by Lockheed in connection with the PAVEWAY™ mark.  Lockheed's use

22  of the PAVEWAY™ trademark has created the false impression that its LGBs are of the

23  same quality as Raytheon's LGBs, when that is not the case.

24      43.     Lockheed's use of the PAVEWAY mark to identify its own LGBs has

25  resulted in a pronounced loss in LGB market share for Raytheon.  This loss in market

26  share would not have occurred without the false equivalency created by Lockheed's

27  misappropriation of Raytheon's valuable PAVEWAY™ trademark.  Lockheed's use of

28



1   the PAVEWAY mark has also resulted in significant losses to Raytheon in sales to

2   foreign military units who buy in the U.S., which likewise would not have occurred

3   without Lockheed's misuse of and intentional attempts to infringe upon and destroy

4   Raytheon's trademark rights.

5       44.    The need to prevent confusion in this case is heightened because the

6   products at issue are military weapons and confusion among these products could have

7   disastrous effects.

8       45.    As a result of Lockheed's actions, Raytheon has suffered and continues to

9   suffer substantial damage and irreparable injury.  Raytheon has no adequate remedy at

10  law, and unless Lockheed is enjoined by this court, its acts will continue to cause damage

11  and irreparable injury to Raytheon, and to damage Raytheon's goodwill and business

12  reputation.  Raytheon cannot ascertain the precise amount of its damages at this time.

### FIRST CLAIM FOR RELIEF
**(Declaratory Judgment)**
**(28 U.S.C. § 2201)**

15      46.    The allegations of the preceding paragraphs are incorporated herein by

16  reference.

17      47.    There is an actual controversy between the parties as to the protectability of

18  the PAVEWAY™ mark, including whether the PAVEWAY™ mark was generic at the

19  time that Lockheed entered the LGB market in 2002.

20      48.    Raytheon has a real and reasonable apprehension of litigation.

21      49.    The controversy is ripe for adjudication.

### SECOND CLAIM FOR RELIEF
**(Unfair Competition and False Designation of Origin)**
**(15 U.S.C. § 1125(a))**

25      50.    The allegations of the preceding paragraphs are incorporated herein by

26  reference.

27      51.    Lockheed's use of the PAVEWAY mark is likely to deceive and cause

28  confusion of the purchasing public, both point of sale and post-sale confusion, and induce



LEWIS
AND
ROCA
—LLP—
L A W Y E R S

1   them to believe that Lockheed or its LGBs originate with or are in some manner related

2   to, approved by or sponsored by Raytheon.

3        52.   Lockheed has intentionally engaged in conduct that constitutes a false

4   designation of origin, a false or misleading description of fact, and a false or misleading

5   representation of fact tending wrongfully and falsely to describe or represent a connection

6   or affiliation between Lockheed goods and Raytheon's goods.

7        53.   Lockheed's actions constitute use of a false designation of origin, or a false

8   representation, which wrongfully and falsely designates the origin of Lockheed's goods

9   and related commercial activities as originating from or being approved by Raytheon, and

10  thereby constitute a false description or representation used in interstate commerce in

11  violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

12       54.   Because of Lockheed's unfair competition and false designation of origin,

13  Raytheon has been irreparably harmed.   Raytheon will continue to suffer irreparable

14  harm unless Lockheed is permanently enjoined from infringing the PAVEWAY™ Mark.

15       55.   Raytheon is entitled to recover damages, as well as all profits heretofore

16  realized by Lockheed during its infringement of the PAVEWAY™ mark, as well as

17  Raytheon's attorney's fees and costs in this action pursuant to 15 U.S.C. § 1117(a).

18       56.   Lockheed's actions have been misleading, willful, and malicious.

19  Therefore, Raytheon is entitled to recover three times the amount of Lockheed's profits

20  plus Raytheon's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(b).

### THIRD CLAIM FOR RELIEF
**(Trademark Infringement**
**(A.R.S. §§ 44-1441, *et seq.*)**

23       57   Raytheon repeats the allegations contained in the preceding paragraphs as if

24  set forth in full herein.

25       58.   Raytheon owns Arizona state trademark No. 55465 for the PAVEWAY

26  mark.

27       59.   Lockheed's use of Raytheon's PAVEWAY™ mark is likely to cause



1  confusion, or to cause mistake, or to deceive consumers as to the origin, sponsorship, or

2  approval of Lockheed's goods and related commercial activities.

3      60.    Lockheed's unauthorized use of Raytheon's PAVEWAY™ mark infringes

4  Raytheon's statutory trademark rights and constitutes infringement under A.R.S. §§ 44-

5  1441 *et seq.*

6      61.    These actions have injured Raytheon and continue to cause injury entitling

7  Raytheon to damages in an amount to be proven at trial and to injunctive relief.

8                    **FOURTH CLAIM FOR RELIEF**
9          **(Common Law Trademark Infringement and Unfair Competition)**

10     62.    Raytheon repeats and realleges each and every allegation set forth in the

11  preceding paragraphs as if fully set forth herein.

12     63.    As a result of its actions, as described above, Lockheed has

13  misappropriated valuable property rights of Raytheon, is seeking to trade on the goodwill

14  symbolized by Raytheon's PAVEWAY™ mark, and is thereby likely to confuse and

15  deceive purchasers and end users regarding the origin, sponsorship, or approval of

16  Lockheed's goods and related commercial activities.

17     64.    In addition, Lockheed is liable for engaging in conduct intended to destroy

18  or reduce the distinctiveness of the PAVEWAY™ mark.

19     65.    The acts complained of herein constitute common law trademark

20  infringement and unfair competition.

21     66.    The acts complained of herein have damaged Raytheon and, unless

22  permanently enjoined by this Court, will continue to damage Raytheon irreparably.

23  Raytheon has no adequate remedy at law for these wrongs and injuries.  The damage to

24  Raytheon includes harm to its goodwill and reputation.  Raytheon is, therefore, entitled to

25  a permanent injunction, and an award of damages.

26

27

28



**LEWIS**
AND
**ROCA**
—LLP—
L A W Y E R S

### FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment)

67.    Raytheon repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

68.    Lockheed's acts have led to an improper enrichment of Lockheed to the severe detriment of Raytheon.  Lockheed uses the PAVEWAY™ mark for goods that compete with those offered by Raytheon, thereby gaining a special edge and a "free ride" in that Lockheed has not been burdened with the investment of time and expense incurred by Raytheon in developing goodwill, value, secondary meaning, and popularity of the PAVEWAY™ mark and establishing the track record of proven product performance that the mark symbolizes.

69.    By its actions, Lockheed has been enriched to the detriment and impoverishment of Raytheon, with no justification for Lockheed's enrichment and Raytheon's impoverishment.  Moreover, there is a direct link or connection between Lockheed's enrichment, on the one hand, and the detriment and impoverishment suffered by Raytheon, on the other.  Raytheon has suffered, and will continue to suffer, irreparable injury and harm as a result of Lockheed's actions, and has no adequate remedy at law.

70.    By its action, as hereinabove pleaded, Lockheed has very deliberately and intentionally taken steps to progressively encroach on Raytheon's rights so as to disrupt Raytheon's business and gain an economic advantage over Raytheon.

71.    As a result of Lockheed's conduct, as hereinabove pleaded, Raytheon has been and will continue to be commercially damaged because of customer confusion as to the origin, sponsorship, or approval of the LGB products sold by Lockheed.  Lockheed has been unjustly enriched through its unlawful and unauthorized actions as hereinabove pleaded, including by winning contract awards and other business as a result of Lockheed's improper and deceptive use of the PAVEWAY mark as well as its improper and misleading actions taken in a calculated attempt to render the mark generic where other generic terms (e.g. GBU 10, GBU 12, and GBU 16) were readily available for its



LEWIS
AND
ROCA
—LLP—
L A W Y E R S

1   use in competing in the LGB marketplace.

2   72.   Lockheed has no competitive need to use Raytheon's PAVEWAY™ mark

3   in connection with its LGB and in the government procurement process - the only reason

4   for it to do so is to obtain an economic benefit by conveying a particular level of quality

5   with its product, when that it not the case.   This level of quality is associated with

6   Raytheon's PAVEWAY™ trademark LGB products and not with Lockheed's LGB

7   products.

8   73.   Lockheed's actions have resulted in it being unjustly enriched to the

9   impoverishment of Raytheon.   Based on Lockheed's actions, Raytheon is entitled to an

10   award in the amount of damages it has suffered as a result of Lockheed's actions.

11   **PRAYER FOR RELIEF**

12   WHEREFORE, Raytheon respectfully requests judgment as follows:

13   A.   That the Court declare that: (1) the PAVEWAY™ mark is a protectable

14   trademark, and not a generic term for laser guided bombs; (2) Raytheon is the owner of

15   all right, title and interest in and to the PAVEWAY™ mark for laser guided bombs and

16   related goods and services; and (3) Raytheon is entitled to federal registration of the

17   PAVEWAY™ mark for laser guided bombs and related goods and services.

18   B.   That the Court direct the United States Patent and Trademark Office to

19   grant registration of the PAVEWAY mark to Raytheon.

20   C.   That the Court enter a judgment for Raytheon and against Lockheed for:

21   (1)   Unfair competition and false designation of origin as defined in

22   15 U.S.C. § 1125(a);

23   (2)   Trademark infringement under A.R.S. §§ 44-1541 and 44-1452;

24   (3)   Common law trademark infringement and unfair competition; and

25   (4)   Unjust enrichment.

26

27

28

LEWIS
AND
ROCA
—LLP—
L A W Y E R S

1      D.    That the Court permanently enjoin Lockheed and its officers, agents,

2 representatives, servants, employees, attorneys, successors and assigns, and all others in

3 active concert or participation with Lockheed, from:

4      (1)    Using the PAVEWAY™ mark or any confusingly similar mark or

5 other colorable imitation of the PAVEWAY™ mark, in connection with the advertising,

6 manufacturing, offering for sale, distribution or sale of LGB products or any other goods;

7      (2)    Using the PAVEWAY™ mark in a generic manner, claiming that the

8 PAVEWAY™ mark is a generic term, or engaging in efforts to destroy or reduce the

9 distinctiveness of the PAVEWAY™ mark;

10      (3)    Committing any other acts calculated to cause actual or potential

11 purchasers to believe that Raytheon is the source or sponsor of Lockheed's goods; and

12      (4)    Assisting, aiding or abetting any supplier, distributor or any other

13 person or business entity in engaging in or performing any of the activities referred to in

14 subparagraphs (1) through (3) above.

15      E.    For an award of all profits heretofore realized by Lockheed during its use of

16 the infringing marks pursuant to 15 U.S.C. § 1117, and for an award of reasonable

17 attorney's fees pursuant to 15 U.S.C. § 1117(a), given that this is an exceptional case.

18      F.    For an award of all damages sustained by Raytheon as a result of

19 Lockheed's unlawful acts as hereinabove pleaded, including for compensatory, punitive

20 and exemplary damages.

21      G.    For an award of costs.

22      H.    For all other relief the Court deems just and proper.

23                  **JURY DEMAND**

24      Plaintiff hereby demands a trial by jury, on all claims so triable, comprised of the

25 maximum number of jurors allowed by law.

26

27

28

LEWIS
AND
ROCA
— LLP —
L A W Y E R S

1   RESPECTFULLY SUBMITTED this 27th day of September 2012.

2                                    LEWIS AND ROCA LLP

3

4                                    By /s/  Sean Garrison
                                         Michael J. McCue (pro hac vice pending)
5                                        Jennifer A. Van Kirk
                                         Sean Garrison
6                                        Anne Aikman-Scalese

7
                                         Attorneys for Raytheon Company
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28